# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## Appeal No. 15-1686

TECSEC, INC.,

*Plaintiff-Appellant,*

v.

ADOBE SYSTEMS INCORPORATED,

*Defendant-Appellee,*

and

SAS INSTITUTE, INC., SAP AMERICA, INC., SAP, AG, CISCO SYSTEMS, INC., SYBASE, INC., SOFTWARE AG, SOFTWARE AG, INC., PAYPAL, INC., ORACLE CORPORATION AND ORACLE AMERICA, INC.

*Defendants.*

Appeal from the United States District Court for the
Eastern District of Virginia in 1:10-CV-115, Hon. Judge Leonie M. Brinkema

## CORRECTED RESPONSE BRIEF
## OF APPELLEE ADOBE SYSTEMS INCORPORATED

Charlene M. Morrow (CSB No. 136411)
Virginia K. DeMarchi (CSB No. 168633)
Phillip J. Haack (CSB No. 262060)
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

*Attorneys Defendant-Appellee
Adobe Systems Incorporated*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 28 and 26.1, Appellee

Adobe Systems Incorporated states that no parent corporations and no publicly

held companies own 10 percent or more of its stock.

## CERTIFICATE OF INTEREST

Counsel for the Appellee Adobe Systems Incorporated certifies:

1.    The full name of every party or amicus represented by me is:

Adobe Systems Incorporated.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this case are:

Charlene M. Morrow, Virginia K. DeMarchi, Phillip Haack, David Wallace, Tamara Hill, and Dargaye Churnet of Fenwick & West LLP; Craig C. Reilly of the Law Offices of Craig C. Reilly; Andrew Neal Stein and Lyle Roberts of Dewey & LeBoeuf LLP; Henry Bunsow and Christina Finn of Howrey LLP, Dewey & LeBoeuf LLP, and Bunsow De Mory; Henry K. Su, Vivian Kuo, William P. Nelson, and James Valentine of Howrey LLP; Riccardo Macchiaroli and Steven E. Adkins of Allen & Overy.

Dated:  September 30, 2015      By:   */s/ Charlene M. Morrow*
                             Charlene M. Morrow
                             *Counsel for Defendant-Appellee*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

CERTIFICATE OF INTEREST .....................................................................i

STATEMENT OF RELATED CASES .......................................................... viii

STATEMENT OF THE ISSUES ...................................................................1

STATEMENT OF THE CASE........................................................................3

I.     THE PATENTS AND PRIOR PROCEEDINGS...........................................3

II.    REMAINING ACCUSED ADOBE PRODUCT .........................................6

III.   SUMMARY JUDGMENT PROCEEDINGS .............................................13

IV.    THE DISTRICT COURT HEARING ON ADOBE'S MOTION FOR
       SUMMARY JUDGMENT OF NON-INFRINGEMENT ...........................15

SUMMARY OF THE ARGUMENT ....................................................................18

ARGUMENT .........................................................................................20

I.     THE DISTRICT COURT GRANTED SUMMARY JUDGMENT
       ONLY AFTER PROVIDING NOTICE AND AN OPPORTUNITY
       FOR TECSEC TO BE HEARD ................................................................20

II.    THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT
       OF NON-INFRINGEMENT BASED ON THE "SELECTING A
       LABEL" LIMITATION WAS PROPER......................................................26

       A.    The District Court Correctly Construed the Term "Selecting a
             Label" to Mean "Choosing a Pre-Existing Label"...............................26

       B.    The District Court Correctly Granted Summary
             Judgment on the System Claims as Well as the
             Method Claims of the DCOM Patents ................................................30

# TABLE OF CONTENTS
## (continued)

Page

C.  The District Court Found No Infringement on a Complete Factual Record, and the Factual Record on Appeal Fully Supports this Ruling ................................... 33

III.  TECSEC HAS WAIVED ANY ARGUMENTS ON INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ......... 34

IV.  THE COURT SHOULD AFFIRM THE JUDGMENT OF NON-INFRINGEMENT ON ALTERNATIVE GROUNDS ................................ 35

A.  Acrobat Does Not Meet the "Object-Oriented Key Manager" and "Display Header" Limitations, as Correctly Construed by the District Court ................................................................ 35

1.  "Object-Oriented Key Manager" ............................... 36

2.  "Display Header" ................................................... 39

B.  Acrobat Does Not Contain Memory Hardware as Required by the Asserted System Claims ................................................ 41

C.  Acrobat Does Not Meet the "Label" or "Labelling" Limitations of the Asserted Claims ........................................................ 41

1.  "Label" ................................................................. 41

2.  "Labelling" ........................................................... 44

D.  Acrobat Does Not Meet the "Multi-Level . . . Security" Limitation of the Asserted Claims ....................................... 46

V.  TECSEC'S REQUEST FOR REASSIGNMENT FOLLOWING REMAND SHOULD BE DENIED .............................................. 50

CONCLUSION ................................................................................ 58

CERTIFICATE OF SERVICE ........................................................ 59

CERTIFICATE OF COMPLIANCE ................................................ 60

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AIA Eng'g Ltd. v. Magotteaux Int'l S/A*,
    657 F.3d 1264 (Fed. Cir. 2011) ......................................................37

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    No. 2009-1372, 2015 WL 4760450 (Fed. Cir. Aug. 13, 2015)........48

*Allstate Ins. Co. v. Fritz*,
    452 F.3d 316 (4th Cir. 2006) ........................................................23

*Amzura Enters., Inc. v. Ratcher*,
    18 F. App'x 95 (4th Cir. 2001) ......................................................25

*AquaTex Indus., Inc. v. Technique Solutions*,
    479 F.3d 1320 (Fed. Cir. 2007) .....................................................35

*Bocek v. JGA Assocs., LLC*,
    No. 14-1208, 2015 WL 3775644 (4th Cir. June 18, 2015) ..............51

*Chi. Bd. Options Exch., Inc. v. Int'l. Secs. Exch., LLC*,
    677 F.3d 1361 (Fed. Cir. 2012) .....................................................29

*Clock Spring, L.P. v. Applied Consultants, Inc.*,
    560 F.3d 1317 (Fed. Cir. 2009) ................................................38, 40

*Cook Biotech Inc. v. Acell, Inc.*,
    460 F.3d 1365 (Fed. Cir. 2006) ...........................................43, 44, 45

*Digital Biometrics, Inc. v. Identix, Inc.*,
    149 F.3d 1335 (Fed. Cir. 1998) ................................................46, 50

*Function Media, L.L.C. v. Google, Inc.*,
    708 F.3d 1310 (Fed. Cir. 2013) .....................................................53

*GE Lighting Solutions, LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014) ................................................33, 38

*Greenlaw v. U.S.*,
    554 U.S. 237 (2008)......................................................................20

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Henderson ex rel. Henderson v. Shinseki*,
    562 U.S. 428 (2011)............................................................20

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*,
    424 F.3d 1235 (Fed. Cir. 2005) ................................50, 51, 57

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
    382 F.3d 1367 (Fed. Cir. 2004) ......................50, 51, 56, 57

*JVC Kenwood Corp. v. Nero, Inc.*,
    No. 2014-1011, 2015 WL 4892413 (Fed. Cir. Aug. 17, 2015)........42

*Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*,
    590 F.3d 1326 (Fed. Cir. 2010) ....................................20

*Liobmedia, LLC v. Dataflow/Alaska, Inc.*,
    349 F. App'x 843 (4th Cir. 2009)..................................21

*Mangosoft, Inc. v. Oracle Corp.*,
    525 F.3d 1327 (Fed. Cir. 2008) ................................27, 40

*Matthews v. Thomas*,
    385 F. App'x 283 (4th Cir. 2010)..................................23

*McNeil v. Wis.*,
    501 U.S. 171 (1991)............................................20

*Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc.*,
    541 Fed. App'x 964 (Fed. Cir. 2013) ..............................24

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) ....................................42

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ....................................27

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*,
    320 F.3d 1354 (Fed. Cir. 2003) ....................................41

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Rutecki v. CSX Hotels, Inc.*,
290 F. App'x 537 (4th Cir. 2008) ................................................................21, 23

*SmartGene, Inc. v. Advanced Biological Labs., SA*,
555 F. App'x 950 (Fed. Cir. 2014) .............................................................30, 31

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) .............................................................30, 32, 34

*TecSec, Inc. v. Int'l Bus. Machs.*,
466 F. App'x 882 (Fed. Cir. 2012) .................................................................3, 52

*TecSec, Inc. v. Int'l Bus. Machs.*,
731 F.3d 1336 (Fed. Cir. 2013) ................................................................*passim*

*TecSec, Inc. v. Int'l Bus. Machs.*,
763 F. Supp. 2d 800 (E.D. Va. 2011) ............................................................3, 52

*TecSec, Inc. v. Int'l Bus. Machs.*,
769 F. Supp. 2d 1997 (E.D. Va. 2011) ..........................................................3, 52

*TecSec, Inc. v. Protegrity, Inc.*,
No. 2:01-cv-233 (E.D. Va. Nov. 14, 2001), ECF No. 24 .......................28, 30, 51

*Thorner v. Sony Computer Entm't*,
669 F.3d 1362 (Fed. Cir. 2012) ...................................................................37, 43

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
659 F.3d 1376 (Fed. Cir. 2011) ........................................................................54

*U.S. v. Guglielmi*,
929 F.2d 1001 (4th Cir. 1991) ...................................................................50, 51

*U.S. v. N. Carolina*,
180 F.3d 574 (4th Cir. 1999) ...............................................................50, 51, 58

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015) (*en banc*) .......................................................54

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

STATUTES

35 U.S.C. § 101 .......................................................................................................56

RULES

Federal Rule of Civil Procedure 56(f)(2) ...............................................................20

OTHER AUTHORITIES

MACMILLAN ENGLISH DICTIONARY (2d ed. 2007) .....................................27, 28, 39

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003) ...................27, 39

## STATEMENT OF RELATED CASES

There have been two prior appeals in the same civil action before this court:

1.      *TecSec, Inc. v. Int'l Bus. Mach. Corp.*, 466 Fed. App'x 882 (Fed. Cir. 2012) (Judges Linn, Dyk, and Prost).

2.      *TecSec, Inc. v. Int'l Bus. Mach. Corp.*, 731 F.3d 1336 (Fed. Cir. 2013) (Judges Moore, Linn, and Reyna).

Adobe is not aware of any other case that would be affected by this appeal.

# STATEMENT OF THE ISSUES

1.      Whether the district court gave TecSec adequate notice and an opportunity to be heard, as required by Fourth Circuit law, before granting summary judgment of non-infringement.

2.      Whether the Court should affirm the judgment of non-infringement on the merits where the district court correctly construed "selecting a label" and found the accused Acrobat products do not meet that limitation.

3.      Whether TecSec has waived its objection to the ruling below on the doctrine of equivalents, by not briefing its position in Appellant's Brief.

4.      Whether the Court should affirm on one or more of these alternative grounds:

      a      The record shows the accused products do not meet the "object-oriented key manager" and "display header" limitations, as correctly construed by the district court;

      b.      The undisputed record shows the accused products do not contain the memory hardware required by each of the asserted system claims;

      c.      Under either party's claim construction, the required "labels" or "labelling" are not used in the accused products; and

      d.      The record shows the accused products do not nest encrypted objects as required by the Court's construction of the term "multi-level . . .

1

security."

     5.     Whether the Court should deny the extraordinary remedy of reassignment where five years of procedural history show the district court is not biased.

## STATEMENT OF THE CASE

### I.     THE PATENTS AND PRIOR PROCEEDINGS

More than five years ago, TecSec filed this patent infringement action

asserting that Adobe Systems Incorporated ("Adobe") and twelve other defendants

infringed eleven patents.  A4368–A4450.  The district court, in an effort to

streamline proceedings, allowed TecSec to proceed first against co-defendant

International Business Machines Corporation ("IBM").  TecSec and IBM

vigorously litigated the case, and the district court issued several orders in favor of

each party.  The district court denied IBM's motion for summary judgment of

invalidity and inequitable conduct, but granted IBM's motion for summary

judgment of non-infringement.  *TecSec, Inc. v. Int'l Bus. Machs.*, 763 F. Supp. 2d

800 (E.D. Va. 2011) ("*TecSec I*"); *TecSec, Inc. v. Int'l Bus. Machs.*, 769 F. Supp.

2d 1997 (E.D. Va. 2011) ("*TecSec II*").  The Court affirmed the district court's

decision without opinion in *TecSec, Inc. v. Int'l Bus. Machs.*, 466 F. App'x 882

(Fed. Cir. 2012) ("*TecSec III*").

Following affirmance of the IBM summary judgment ruling, TecSec

stipulated to a judgment that Adobe and the other remaining defendants did not

infringe the asserted patents, and again appealed.  A4488–A4496.  The Court

affirmed the district court's construction of one key term, "multi-level . . .

security," and reversed the district court's construction of another key term,

"multimedia." *TecSec, Inc. v. Int'l Bus. Machs.*, 731 F.3d 1336 (Fed. Cir. 2013) ("*TecSec IV*"). The Court found that the prosecution history of the asserted patents "mandates a narrower construction" of "multi-level . . . security" than the ordinary meaning advocated by TecSec. *Id*. at 1345. The applicant's amendments to the patent specifications had narrowed the definition of that term, resulting in patent scope that was more limited than the scope TecSec sought. *Id*. The Court reversed the district court's construction of the term "multimedia," holding that it improperly limited claim scope given the applicant's use of the term in the specifications. *Id*. at 1346.

On remand from *TecSec IV*, the district court permitted TecSec to proceed against another defendant. TecSec selected Adobe, over Adobe's objection. A1945–A1962; A1963–A1968; A46–A47. In light of the *TecSec IV* decision, TecSec substantially narrowed its case against Adobe. It dropped its infringement claims against two of Adobe's three accused product families, Adobe LiveCycle Enterprise Suite™ and Adobe ColdFusion™. A1963–A1968. It also dismissed with prejudice all claims against Adobe for infringement of U.S. Patent No. 6,694,433. A1987, 7:14–23. TecSec continued to assert claims of direct infringement by Adobe of four patents, U.S. Patent Nos. 5,369,702; 5,680,452; 5,717,755; and 5,898,781 ("the DCOM patents") against a single product family, Adobe Acrobat™. A1965. TecSec further limited its claims to direct

infringement.  A3821–A3822.  Therefore, only direct infringement remains at issue in the case.

The DCOM patents are by no means fundamental to the field of cryptography.  Rather, the claims are drawn to a specific software architecture in which a software object is first encrypted and then labelled, then nested within another software object, which is in turn encrypted and labelled.  *TecSec IV*, 731 F.3d at 1345–46 (The applicant "amended the specification" to clarify the "multi-level . . . security" term, defining the term to require "the nesting of individually encrypted objects.").  For example, claim 1 of the '702 patent claims:

> A method for providing multi-level multimedia security in a data network, comprising the steps of:
>
> A)    accessing an object-oriented key manager;
> B)    selecting an object to encrypt;
> C)    selecting a label for the object;
> D)    selecting an encryption algorithm;
> E)    encrypting the object according to the encryption algorithm:
> F)    labelling the encrypted object:
> G)    reading the object label;
> H)    determining access authorization based on the object label; and
> I)    decrypting the object if access authorization is granted.

A161 ('702 patent at 12:2–15).  The Court found that "multi-level . . . security" is achieved when "encrypted objects [are] nested within other objects which are also encrypted."  *TecSec IV*, 731 F.3d at 1345 (quoting A157 at 4:25–34).  Thus, the claims are to systems or methods relating to nested encryption of labelled objects and/or to the subsequent access to the nested encrypted content.

## II.    REMAINING ACCUSED ADOBE PRODUCT

Adobe Acrobat is a family of software products that includes Acrobat Reader, Acrobat Standard, and Acrobat Pro.  These products are used to create, view, manipulate, print and manage portable document format ("PDF") documents.  A2481 at ¶ 4.  Of these, TecSec accuses only Acrobat Standard and Acrobat Pro of infringement.  *Id*.  Acrobat Standard and Acrobat Pro enable users to view, search, and print PDF documents.  They also include features that allow users to convert PDF documents, merge files into PDF documents, and protect PDF documents.  *Id*.

The relevant features of the accused products are extensively and publicly documented in Adobe's PDF specification.  A version of the PDF specification is the basis for the current ISO PDF standard, ISO 32000.  A2481–A2482 at ¶ 5. Each version of Acrobat supports the ISO PDF standard and provides Adobe-specific extensions.  *Id*.  The PDF specification for the accused Acrobat products describes the PDF document structure in detail.  *Id*.; *see* A2943–A2953.  TecSec had ready access to this information, as well as to the accused products, prior to filing its district court action.

A PDF document includes objects that represent the things displayed in the document, and structural information to control where and how the objects are displayed.  A2481 at ¶ 4.  The PDF specification explains that a PDF document

6

includes a header, a body, a cross-reference table, and a trailer.  A2482–A2485 at

¶¶ 6, 8.  The header specifies the PDF version.  *Id.*  The body contains a sequence

of objects representing the contents of the document.  *Id.*  The cross-reference table

identifies the locations of objects within a PDF document.  *Id.*  Finally, the trailer

enables an application reading the file to quickly find the cross-reference table and

certain special objects.  *Id.*  This format is depicted below:



A2485; A2947.

When the accused Acrobat products are used for encryption, the user must

either encrypt all data in the document, including attachments, or encrypt only

attached files.  A2490–A2491 at ¶¶ 18–20.  The user interface for this feature is

shown below:



*See* A3772; A3554, 83:1–7 (confirming that the user can "select the components to encrypt, which is all contents, all contents except metadata, or just attachments"). The accused products do not allow a user to separately apply encryption to different objects within a PDF document. Instead, a given PDF document has only a single pair of passwords and a single encryption dictionary for that PDF document. A2491–A2492 at ¶¶ 22, 24. If a user embeds another encrypted file within the PDF file, the accused products do not permit additional passwords or an additional encryption dictionary for the attached file. *Id*.

When encryption is used, the document trailer will contain an encryption dictionary. A2492 at ¶ 22. The existence of the encryption dictionary signals that encryption was used, and the encryption dictionary will hold values indicating the

type of security used.  A2948; A3514–A3516, 33:5–35:9.

The encryption dictionary identifies a security handler, a software module that implements the cryptographic methods used to encrypt or decrypt a PDF document.  A2492 at ¶ 23.  The PDF standard specifies a default security handler that applies passwords.  *Id.*  PDF-compatible software can provide other security handlers.  *Id.*

With the standard security handler, the encryption dictionary includes values derived from a user password and an owner password.  A2492 at ¶ 24.  The encryption dictionary does not store the passwords itself.  *Id.*  These derived values are checked to see if a password entered when the document is opened is a correct owner password, user password, or neither.  *Id.*  The software viewing the encrypted PDF document also uses these values to compute the encryption key and permission value for the document.  *Id.*  Permission values specify the types of actions a user may take with the PDF document, *e.g.*, reading, writing, or saving.  A2493 at ¶¶ 25–26.  The permission value does not determine who can access a PDF document.  *Id.* at ¶ 25.

An alternative security handler, also supported by Adobe, can control access based on ownership of a certificate and its corresponding private key.  A3515, 34:24–35:9; A3521, 40:9–12, A3535–A3536, 60:24–61:22.  Like password security, certificate security does not control access based on the identity of the

user.  A3535–A3536, 60:24–61:22.

The encryption dictionary that TecSec contends is the claimed "label" is part of the internal PDF document structure, and is not visible to users.  A2491–A2492 at ¶ 22.  The encryption dictionary is found in the trailer of a PDF document.  *Id.* TecSec's expert identified the following user display in Acrobat as the screen where the user purportedly "select[s] a label":



A3772 at ¶ 40.  TecSec's expert opined that a user "select[s] a label" when he picks an encryption algorithm.  *Id.*  The encryption dictionary is not shown on this screen.  A3574, 120:18–21 ("'Is it possible to view the content of the encryption dictionary?' . . . 'Not with Acrobat.'").  In addition, as the district court found,

"Acrobat does not attach an encryption dictionary to an encrypted PDF document; instead, it inserts the encryption dictionary into the (pre-existing) trailer for that file."  A40, n. 23 (citing A3790–A3791 at ¶ 68).

When encrypting a PDF document, the accused Acrobat products do not check to see if the content was previously encrypted and do not manage multiple levels of encryption.  A3569, 112:5–10.  These products operate in the same way whether the user encrypts a document with a cross-reference to an un-encrypted document or a document with a cross-reference to a document the user or someone else previously encrypted.  A2490–A2491 at ¶ 20.  In short, the accused products are blind to the content of these objects.  *Id*. ("Because attached files are represented in a PDF document as a stream of bytes, Acrobat is blind to what a particular attachment is or whether it was previously encrypted before a user attached it to the PDF document.").  Acrobat does not modify or manage any previously-applied encryption regardless of what application was used to accomplish that encryption.  *Id*.  When a file of any kind is attached to a PDF document, the file data is stored as part of the PDF document as a stream object.  A2486 at ¶¶ 11–12.  An attached file is not "nested" in different layers of a multi-level structure as the claimed objects in the DCOM patents are.  In a PDF document, the contents of an attached file are instead stored in-line with other content as a stream object at the same level as other objects that comprise the PDF

document.  *Id*. at ¶¶ 12–13.

TecSec misstates the content of Mr. Kaufman's deposition testimony on this point.  At no point during his deposition did Mr. Kaufman admit that Adobe infringes.  In fact, Mr. Kaufman disagreed when TecSec's counsel, Michael Oakes, tried to get him to agree that Acrobat was like the following figure (which Mr. Oakes drew):



Mr. Oakes's drawing resembles one of the figures in one of the DCOM patents.  A150.  But Mr. Kaufman rejected Mr. Oakes's suggestion that the figure accurately reflects how Acrobat works.  A3568–A3569, 111:3–112:22 (Q: "So each one of these documents could be encrypted and password-protected, or

encrypted and protected with certificate security, correct?"  A: "*With respect to any ring, the stuff inside the ring is just a file.  We don't know what it is.*") (emphasis added).

## III.  SUMMARY JUDGMENT PROCEEDINGS

Adobe asked the district court for leave to file an early summary judgment motion on the issue of non-infringement, which was granted.  A48–A60.  In making this request, Adobe advised the Court that it would seek claim construction on the "label"-related claim terms.  A1988–A1989, 8:25–9:9.  By separate letter to TecSec, Adobe listed the label limitations, including "selecting a label for the object," "labelling the encrypted object," "reading the object label," and "determining access authorization based on the object label."[1]  A1960–A1961; *see also* A2133.  TecSec thus knew prior to serving any discovery that the term "label," across all the asserted claims, would be at the heart of Adobe's motion.

Discovery opened on September 25, 2014.  A48–A60.  Adobe filed a motion on October 17, 2014, seeking summary judgment of non-infringement of the DCOM patents on a number of grounds.  A2438–A2477.  In particular, Adobe moved for summary judgment of non-infringement on the grounds that Adobe

---

[1] In the letter, Adobe requested withdrawal of TecSec's infringement claims based on the label limitations.  Specifically, Adobe told TecSec that it had "no basis to contend that Adobe Acrobat" met the claim limitations requiring a "label" or "labelling," including specifically the limitations: "selecting a label for the object," "reading the object label," and "determining access authorization based on the object label."  A4066–A4067.

Acrobat cannot perform encryption or decryption in the required order of steps, and that Acrobat does not meet several limitations of the asserted claims, including the "multi-level security," "object-oriented key manager," "object," "access authorization," "display[ing]," and "label"/"labelling" limitations of the asserted claims.  A2479.  Adobe extensively briefed both claim construction and non-infringement of the "label" and "labeling" limitations, explaining that TecSec's contention that the claimed labels read on the passwords and encryption dictionaries in Acrobat should be rejected.  A2465–A2470.

After receiving Adobe's motion for summary judgment of non-infringement, TecSec served extensive and untimely discovery requests on Adobe.  *See* A3061–A3108 (served eighteen days before close of discovery); A4033 at ¶ 11.  Adobe objected and attempted to negotiate a narrower set of discovery responses limited to the issues raised in Adobe's pending motion, but TecSec refused to limit its requests.  *Id*.  Instead, TecSec filed several motions, asking the court to extend TecSec's discovery deadlines, to compel Adobe to produce all of the requested discovery, and to strike briefing on the issue of "divided infringement."  A3132–A3135; A3245–A3248.  The district court deferred ruling on certain aspects of Adobe's motion.  A64.  The district court granted-in-part TecSec's motion to compel discovery, finding several of TecSec's requests overly broad but allowing other discovery.  A61–A62.  The district court also extended the deadline for

completion of discovery and TecSec's deadline to respond to Adobe's summary judgment motion. *Id*. These orders are not objected to on appeal.

Even in the absence of discovery, TecSec had access to all of Adobe's public documentation, including the PDF specification, and the accused products, prior to filing its district court action. In addition, in compliance with the district court's order, Adobe produced to TecSec its core technical documents, source code, and computer files relating to the accused Acrobat products. A4181; A4182; A4183; A3069–A3071. TecSec also had ample time in deposition; when Adobe produced its technical witness for two days of deposition, TecSec concluded the deposition early on the second day after about three hours on record. A3635 at 77:21–24 ("(This now concludes the video deposition of Marc Kaufman, on December 4, 2014. The time now is 12:46 p.m.)").

## IV.   THE DISTRICT COURT HEARING ON ADOBE'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

At the hearing on Adobe's summary judgment motion, the district court emphasized the importance of the "selecting a label" term. *See* A3931–A3951. The parties had extensively briefed the question of how the terms "label" and "labelling" should be construed and whether Acrobat met those limitations. A2438–A2477; A3453–A3489. However, the district court inquired explicitly about the difference between "selecting" and "creating" a label, and who or what would "select" a label in Acrobat. A3932–A3933, 2:20–3:3; 3:22–24. Adobe took

the position that the accused "label"—the encryption dictionary, according to TecSec—could not be "selected" by an Adobe Acrobat user because the encryption dictionary was created by Acrobat at the time of encryption. A3933–A3934, 3:25–4:6. Adobe acknowledged that the district court could grant summary judgment on the "selecting" aspect of the label limitations, although Adobe believed it had also presented other meritorious grounds for adjudication. A3934–A3935, 4:7–13, 4:21–5:6. Adobe stated that it would not object to further briefing or to having the district court rule on that ground. A3934–A3935, 4:21–5:6.

The district court questioned TecSec on the same issue. A3935–A3938, 5:7–8:17. TecSec disagreed with Adobe, arguing that a user would "select" a label by telling the computer what to do, causing the software to write the encryption dictionary containing the values corresponding to the user's security selection. A3936, 6:1–4. The district court asked if TecSec wished to provide further briefing on the issue. A3937, 7:9–11. TecSec declined this opportunity for further briefing. A3937, 7:12. Counsel for TecSec stated that he thought there was simply no reasonable argument to be made that the accused product did not infringe, and for that reason, no additional briefing would be needed. A3937, 7:12–17. The district court pressed on, stating that it found the words of the claim clear, and was skeptical of TecSec's claim that "selecting" a label was equivalent to "creating" one. A3937–A3938, 7:25–8:4. When TecSec merely repeated its previous

16

argument in response, the district court confirmed that the parties had both refused

additional briefing on the issue.  A3950, 20:11–18.

## SUMMARY OF THE ARGUMENT

TecSec makes several arguments on appeal.  None has merit.

First, the district court granted summary judgment only after providing sufficient notice and opportunity to be heard, as required by the Fourth Circuit. Adobe told both TecSec and the district court that it planned to argue the "label" limitations of the asserted claims on summary judgment.  It did in fact raise those limitations in its subsequent motion.  At the hearing on the motion, the district court advised both parties of its concern that the "selecting" aspect of the label limitations was not met by Acrobat, asked the parties to address the issue, and offered both parties the opportunity to provide additional briefing.  TecSec argued the issue on the merits and twice declined additional briefing.

Second, the district court's grant of summary judgment should be affirmed on the merits.  The district court's construction of the term "selecting a label" tracks usage in the intrinsic and extrinsic evidence.  It is also consistent with TecSec's own position in prior litigation on two of the same patents (the '702 and the '781 patents).  The district court's judgment of non-infringement is equally correct.  TecSec's challenge to the district court's conclusion that both the method and system claims require "selecting a label" is not well taken, given TecSec's failure to raise this issue below.  In addition, TecSec points to nothing in the factual record that suggests the district court erred in finding the accused products

do not meet this limitation.

Third, the Court should affirm the district court's ruling that TecSec has not proved infringement under the doctrine of equivalents. TecSec waived this objection by relegating it to a footnote in its opening brief, and by failing to offer evidence on such a theory below.

Fourth, additional grounds exist on which the Court may affirm the existing judgment. The accused products do not meet several additional claim limitations of the asserted patents that have already been fully briefed, including: the "object-oriented key manager" limitation (claim 1 of the '702 patent, claim 1 of the '755 patent, claim 1 of the '781 patent, and claim 1 of the '452 patent) and "display header" limitation (claim 1 of the '755 patent); the memory hardware limitations of the system claims ('702 patent claims 8–9 and '781 patent claims 14–15); the "label" or "labelling" limitations (all asserted claims); and the "multi-level . . . security" limitation (all asserted claims).

Finally, if remanded, this case should not be reassigned. Five years of procedural history show the district court is not biased, and the extraordinary remedy of reassignment is not appropriate in this case.

**ARGUMENT**

## I.   THE DISTRICT COURT GRANTED SUMMARY JUDGMENT ONLY AFTER PROVIDING NOTICE AND AN OPPORTUNITY FOR TECSEC TO BE HEARD

The Federal Rules of Civil Procedure authorize district courts to grant motions for summary judgment "on grounds not raised by a party" after "giving notice and a reasonable time to respond." FED. R. CIV. P. 56(f)(2).  The district court may grant motions "on *legal or factual* grounds not raised by the parties." 2010 Committee Notes (emphasis added).  In reviewing such a district court order, the Court applies the law of the regional circuit.  *See, e.g.*, *Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1332 (Fed. Cir. 2010). Accordingly, TecSec must show a violation of the standards of the Fourth Circuit.

TecSec did not address the relevant Fourth Circuit standards.  TecSec Opening Brief ("TecSec Br."), Dkt. 22 at 18–21.  Instead, it relies on wholly unrelated Supreme Court cases.  TecSec. Br. at 19.  Two of the cases—*McNeil v. Wis.*, 501 U.S. 171 (1991) and *Greenlaw v. U.S.*, 554 U.S. 237 (2008)—address due process in criminal cases.  The other—*Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011)—addresses jurisdictional issues in appeals to the Court of Appeals for Veterans Claims.

In the Fourth Circuit, "[a] district court may grant summary judgment *sua sponte,* so long as the party against whom summary judgment is granted has notice and 'an adequate opportunity to demonstrate a genuine issue of material fact.'"

20

*Liobmedia, LLC v. Dataflow/Alaska, Inc.*, 349 F. App'x 843, 844 (4th Cir. 2009) (internal quotation omitted); *Rutecki v. CSX Hotels, Inc.*, 290 F. App'x 537, 542 (4th Cir. 2008) (courts have an inherent authority to *sua sponte* grant summary judgment after providing notice to the affected party that it must come forward with its evidence).

Here, the district court provided TecSec an opportunity for oral argument on the issue of "selecting a label" as well as multiple opportunities for further briefing on that issue. Specifically, at the January 23, 2015 summary judgment hearing, Judge Brinkema first gave notice she was considering a ruling based on the "selecting" aspect of the "label" limitations, telling the parties, "I'm not sure that [the "selecting a label"] issue has been addressed because I want to know whether creating a label in your view is the same as selecting a label." A3932–A3933, 2:24–3:1. The parties had extensively briefed the operation of the accused products in connection with the "label" and "labelling" aspect of the "selecting a label" limitation, addressing TecSec's contention that the claimed labels read on the encryption dictionaries in the accused products. A2465–2470; A3477–A3481.

Because it was Adobe's motion, the district court first asked Adobe, "[a]re you comfortable addressing that right now, or do you want time to go back and think about that?" A3933, 3:2–3. Adobe indicated it wished to proceed at the hearing. Adobe addressed the "selecting a label" limitation orally and

distinguished it from the "creating a label" limitation that had been briefed. A3933–A3935, 3:4–5:6.  Judge Brinkema then inquired whether Adobe's interpretation of "selecting a label" would then "be sufficient to grant [Adobe] judgment of non-infringement."  A3934, 4:7–8.  Adobe answered that it would be sufficient and explained that although it had raised other grounds, it "certainly wouldn't object to TecSec being heard on that and the Court ruling on that ground."  A3934–A3935, 4:9–5:6.

Judge Brinkema then turned to TecSec, giving it an opportunity to both provide a response and to request "further time to brief" its response to the question of how "selecting a label" should be construed.  A3935, 5:7–10.  Instead of asking for additional time prior to presenting argument or requesting further briefing, TecSec presented evidence and argument at the hearing in support of its position that a user performs the "selecting a label" step when using Acrobat. A3935–A3937, 5:11–7:8.  After TecSec presented its argument regarding "selecting a label," Judge Brinkema gave TecSec another chance to provide further briefing on the issue, which TecSec declined:

> THE COURT:  All right.  So you don't feel any further briefing is needed on the issue of selecting a label versus creating a label?
> MR. OAKES: I don't.

A3937, 7:9–12.  After hearing more evidence and argument from TecSec, Judge Brinkema indicated that she was going to take the matter under submission.

A3950, 20:12–18.  Before concluding the hearing she confirmed that "again, neither side feels the need to further brief this issue about selecting a label versus creating a label." *Id*.  TecSec made no objection.

In sum, the district court gave TecSec notice that it must come forward with evidence on the question of whether Acrobat met the "selecting" aspect of the label limitations and provided TecSec with an actual opportunity to be heard, including an opportunity to continue argument.  In addition, it gave TecSec multiple opportunities to request further briefing. TecSec elected to argue the issue on the merits and then advise the district court that it did not need any further briefing.

Given this record, TecSec's objections to this process are not well taken. TecSec Br. at 18–21.  The Court should conclude that the district court complied with Fourth Circuit requirements prior to granting summary judgment.  *See Matthews v. Thomas*, 385 F. App'x 283, 288–89 (4th Cir. 2010) (holding that the district court did not abuse its discretion by ruling on a motion for summary judgment without further notice to the nonmoving party where, at a hearing, the nonmoving party's "attorney did not object to the court's questions related to [disputed] claims or ask for additional time to respond to them; rather, he answered them"); *see also Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323 (4th Cir. 2006) (affirming summary judgment where party had "*the opportunity* to brief the merits" of a disputed claim) (emphasis in original).

TecSec's reliance on the Court's decision in *Mikkelsen Graphic Eng'g Inc.
v. Zund Am., Inc.* is misplaced. TecSec Br. at 19–20 (citing *Mikkelsen*, 541 Fed.
App'x 964, 972–73 (Fed. Cir. 2013) (applying Seventh Circuit law)). In
*Mikkelsen*, the Court vacated the district court's *sua sponte* grant of summary
judgment that a patent was *not invalid as a matter of law*, where the only motion
made was a motion for summary judgment that the patent *was invalid*; the district
court did not merely *deny* summary judgment of invalidity, but entered a
dispositive judgment in favor of the *non-moving* party on an issue that neither party
had had an opportunity to address. In that case, the error was that the original
moving party was not put on notice that loss of its motion would lead to a *sua
sponte* grant of no invalidity, and did not have an opportunity to oppose. *Id.* at
974. *Mikkelsen* itself explains that this circumstance is materially different from a
grant of summary judgment to the movant on a ground different from that specified
in the motion, which it recognized as permissible. *Id.* at 972 ("[I]f the case is one
appropriate for the entry of summary judgment, the fact that it may be granted on a
ground different from that specified in the motion therefor does not warrant the
disturbing of the judgment on appeal.") (citations omitted). *Mikkelsen* thus
supports Adobe's position.

In addition, TecSec points to no facts or evidence that it could have
submitted that would have been relevant to, much less change the outcome of, the

district court's decision on the "selecting the label" limitation. *Amzura Enters.,*

*Inc. v. Ratcher*, 18 F. App'x 95, 103–04 (4th Cir. 2001) (holding that district

court's grant of summary judgment *sua sponte* without sufficient notice was

harmless error where non-moving party did not request additional time to offer

further evidence or argument and, on appeal, pointed to no additional evidence,

beyond conclusory allegations, that it might have offered had the district court

given it more time to respond).  TecSec makes *the same arguments* on appeal that

it made during the summary judgment hearing before the district court and relies

on *the same evidence* it cited in its briefing on summary judgment below.  For

example, TecSec argued during the hearing that a user of Adobe Acrobat selects a

label by choosing an option, such as password security or certificate security, from

a prompt, and further choosing whether to "encrypt all the content, encrypt only

the metadata, or encrypt only the attachments." A3935, 5:15–21.  Based on that

selection by the user, TecSec argued, Acrobat creates the label by writing the

information into an encryption dictionary. A3936, 6:6–14.  TecSec concluded with

the argument that "[a] user absolutely selects all the components that go into a

label.  The software creates it based on the user inputs." A3937, 7:12–17.  TecSec

advanced this same argument regarding the "selecting a label" limitation in its

brief in opposition to Adobe's motion for summary judgment. A3467 ("This

selection also establishes the contents for the label, because the password security

handler must retrieve certain information from the encryption dictionary to validate a user by his password (*i.e.*, selecting a label for the object)."); A3481 ("When a user selects password security or certificate security with Acrobat and encrypts a PDF document, the security handler creates an encryption dictionary that is attached to the trailer of the PDF document.").  These are the same arguments TecSec now advances in its opening brief.  *See, e.g.*, TecSec Br. at 17 ("[T]he evidence shows that a user selects a label when securing a PDF document with Acrobat by selecting whether to utilize password-based encryption or certificate-based encryption."); *id*. at 32–35 ("Thus, the user must select the type of label to be used, and Acrobat must select and add the final label to the trailer of an encrypted PDF file.").  In addition, TecSec has not objected on appeal to any aspect of the district court order limiting the scope of discovery.

Given the fact that TecSec was actually heard on the ground on which summary judgment was granted, and the fact it elected not to provide further briefing, TecSec's objections to the procedures used by the district court do not provide a basis for reversal.

## II.    THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON THE "SELECTING A LABEL" LIMITATION WAS PROPER

### A.    The District Court Correctly Construed the Term "Selecting a Label" to Mean "Choosing a Pre-Existing Label"

The district court correctly construed "selecting a label" to mean "choosing a

pre-existing label.[2]" TecSec argues that "creating" a label constitutes "selecting" a label. TecSec Br. at 23–27. TecSec's construction contradicts the plain meaning of the term and defies common sense; one cannot "select" something that does not yet exist.

The district court correctly adopted a construction consistent with the intrinsic evidence and the ordinary meaning of the term. *E.g., Mangosoft, Inc. v. Oracle Corp.*, 525 F.3d 1327, 1329–31 (Fed. Cir. 2008) (affirming a claim construction that was "fully consistent with and supported by the intrinsic record – as well as the dictionary"). The district court's construction is consistent with the ordinary meaning of the term "selecting." The district court cited Webster's Dictionary, defining "select" as "chosen from a number or group by fitness or preference." A21. Similarly, Merriam-Webster defines "select" to mean "to choose (someone or something) from a group," and provides a special note for "computers : to choose (a particular action, section of text, etc.) especially by using a mouse." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). MacMillan's Dictionary provides a similar definition for selecting on a computer:

---

[2] TecSec argues that the "selecting a label" term was not in dispute and should not have been construed. TecSec Br. at 21-23. However, the term was in dispute. If it were not, TecSec would not have appealed the underlying ruling, as it does here. The district court correctly construed "selecting a label" under the Court's precedent. *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court . . . must resolve that dispute.").

"to choose something on a computer screen, usually from a menu (list) of choices." MacMillan English Dictionary (2d ed. 2007).

The specification common to all of the DCOM patents uses "selecting" in this same sense. The specification provides examples of "selecting" existing objects for a preview function. The specification explains that a user creates the object prior to selecting it for preview. A159–A161 ('702 patent at 8:1–4; 9:11–14, 10:18–11:2). The '702 patent also describes a user selecting persons or terminals from an existing list in order to determine access to an object. A156, 2:31–57.

TecSec's challenge to the district court's construction is also inconsistent with positions TecSec took in a prior case involving two of the asserted DCOM patents. In that prior case, TecSec argued that in the '702 patent, "[t]he plain meaning of the term 'selecting' is choosing. The patent does not suggest any other meaning." Plaintiff TecSec's Claim Construction Brief at **8–9, *TecSec, Inc. v. Protegrity, Inc.,* No. 2:01-cv-233 (E.D. Va. Nov. 14, 2001), ECF No. 24. In support of its position in that case, TecSec even proffered expert testimony that "the term is understood to mean choosing, typically by highlighting a block of data or text, pointing at or clicking on a selection, or providing identifying information for one of a set of choices." *Id*. at *9. Each of TecSec's examples is a pre-existing item to be selected: a block of data or text, a selection, or a set of choices.

In addition, the doctrine of claim differentiation supports the district court's ruling. *E.g., Chi. Bd. Options Exch., Inc. v. Int'l. Secs. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012) (presumption that different claim terms have different meanings). The claims distinguish between "creating" something and "selecting" something. For example, claim 2 of the '702 patent requires "creating an object." A161, 12:2–23. This claim requires a step of "creating" an object in an application, then "selecting" the object for encryption, and finally "returning" the encrypted object to the application. In this claim, "selecting" means choosing a previously created item. The existence of this "creating" step in claim 2 provides strong evidence that the applicant knew how to describe and claim "creating" an item, as distinct from "selecting" an existing item. The district court, after weighing the evidence, finding the ordinary meaning of the term and finding that the ordinary meaning should apply, correctly concluded that the "selecting" step does not encompass creation.

TecSec's other claim construction argument is also unavailing. TecSec argues that "selecting" a label means selecting components for a label. TecSec's only support for this proposed construction is a single sentence in the specification that reads: "Due to the relative dynamic nature of objects, the DCOM is able to accomplish all tasks 'on the fly.'" A158, 6:16–17. This text has nothing to do with "selecting" (or "creating") a label; it refers to how a previously encrypted

object is decrypted.  A158, 5:47–6:17.[3]

The Court should affirm the district court's claim construction.

### B.    The District Court Correctly Granted Summary Judgment on the System Claims as Well as the Method Claims of the DCOM Patents

TecSec has waived any challenge to the district court grant of summary judgment on the system claims.  Before the district court, TecSec did not distinguish between the method claims and the system claims with respect to the "label" requirements.  A3477–A3481.  In fact, in its opposition to summary judgment, TecSec stated that claim 1 of the '702 patent—a method claim—was "exemplary" of all asserted claims of the DCOM patents.  A3465–A3466.  It did not advance any argument that the system and method claims had different scope with respect to the label limitations.  By failing to develop that argument in its briefing before the district court, TecSec waived the argument for appeal.  *See SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 F. App'x 950, 954 (Fed. Cir. 2014) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006)) (when defendant asserted a claim was representative in its summary judgment filing and plaintiff did not dispute the characterization, plaintiff waived the argument that there was a meaningful distinction between the claims).

---

[3] In the *Protegrity* matter, the district court did not issue a claim construction prior to stipulated dismissal of the case.  Joint Motion to Dismiss, *TecSec, Inc. v. Protegrity, Inc.*, No. 2:01-cv-233 (E.D. Va. Nov. 30, 2001), ECF No. 25.

TecSec in fact took the position below that the "object labelling subsystem" limitation of the system claims is met when "Adobe Acrobat products *select a label* for an object." A2208 (emphasis added). TecSec contended that Acrobat must include an "object labelling subsystem" that limits access based on "label conditions" because Acrobat "select[s] a label" for an object when it creates the encryption dictionary. *Id*.

In addition, at the summary judgment hearing, the district court specifically inquired whether "the requirement of the patents that there be a selecting a label for the object," if not met by Acrobat, would be dispositive of the question of infringement by Acrobat. A3932, 2:22–23; A3934, 4:7–9. The district court made it clear to both parties that it believed the issue of "selecting a label" could resolve the case as to *all asserted claims*, not just the method claims. In responding to the district court at oral argument, TecSec again drew no distinction between the asserted method claims and the asserted system claims, nor did it disagree with the proposition that if the district court found Acrobat could not be used to "select a label," that finding would be dispositive of all asserted claims. The district court closed the hearing by confirming that "neither side feels the need to further brief this issue about selecting a label versus creating a label." A3950, 20:15–17. Accordingly, the district court correctly observed in the decision below that any argument that the method and system claims should be treated differently was

31

waived.  A39, n. 22 ("[T]he parties have grouped all asserted claims together for the purposes of the motion for summary judgment, any argument that they should be treated differently is deemed waived."); *see also SmithKline*, 439 F.3d at 1320 (collecting cases waiving arguments not fully argued before the district court).

Additionally, the district court properly held that Adobe did not infringe any of the asserted claims because the accused products do not meet the "selecting a label" limitation.  The district court observed that although the "selecting a label" language does not appear verbatim in the corresponding system claims, "all system claims include selection through the 'object labelling subsystem' and the 'object label identification subsystem,' which restrict access based on 'label conditions' present in a selected label."  A39, n. 22.  For example, claim 8 of the '702 patent requires "an object labelling subsystem."  That sub-system "limit[s] object access, subject to label conditions."  The "object label identification subsystem" further "limit[s] object access."  The common specification of the DCOM patents makes clear that these "label conditions" permit selection of an object by its label.  *See, e.g.*, A156, 2:40–57 ("Using a secure labelling regimen" allows "a sending user [to] specify label conditions that limit access" to the selected "message."); A173, 3:11–23; A189, 2:42–54; A205, 2:31–43.  The district court thus correctly concluded that both the method and system claims require "selecting a label."

Accordingly, the district court's grant of summary judgment on the asserted

system claims should also be affirmed.

### C. The District Court Found No Infringement on a Complete Factual Record, and the Factual Record on Appeal Fully Supports this Ruling

As TecSec did not provide any evidence of infringement under the district court's claim construction, the Court should affirm the grant of summary judgment. *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1314 (Fed. Cir. 2014) (affirming district court's grant of summary judgment where no genuine issue of material fact existed under the district court's claim construction). The factual record fully supports the district court's decision that Acrobat cannot be used to "select a label," and TecSec does not identify any evidence that would have yielded a different result. In addition, the district court made its decision after considering a complete factual record. TecSec had access to Adobe technical documents, the testimony of Adobe's technical witness, the PDF specification, and the opinion of its own expert. At no point did TecSec proffer evidence that the "label" limitations were met under Adobe's constructions. TecSec based its infringement case on its *own* constructions of the "label" limitations that were not adopted by the district court. *See, e.g.*, A3481–A3483; A3772–A3776 at ¶¶ 40–44, A3791–A3792 at ¶70, A3790 at ¶ 67 ("Under [TecSec's]construction, it is my opinion that Adobe Acrobat selects a label for a PDF object [and] labels the encrypted PDF object. . . .). The same is true with respect to the "selecting" aspect

of the "label" limitations:  the district court correctly observed after oral argument on this point that the operation of Adobe Acrobat is not disputed.  A5.

The Court should affirm the district court's conclusion that Adobe is entitled to summary judgment of no infringement as a matter of law because there is no genuine issue of fact regarding whether Acrobat permits "selecting a label."

## III.    TECSEC HAS WAIVED ANY ARGUMENTS ON INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

TecSec disputes the district court's conclusion that it will be foreclosed from arguing infringement under the doctrine of equivalents if the case is remanded.  As an initial matter, TecSec relegates its argument to a footnote.  TecSec Br. at 21, n.4.  A footnote is not sufficient to preserve an argument on appeal.  *SmithKline*, 439 F.3d at 1320 ("[A]rguments raised in footnotes are not preserved.").  This issue is not listed in TecSec's Statement of the Issues under Local Rule 28(a)(6) or in its Summary of Argument, and it has not been adequately briefed.  "[M]ere statements of disagreement with the district court as to the existence of factual disputes do not amount to a developed argument" and are properly considered waived.  *Id*.

TecSec could have argued infringement based on the doctrine of equivalents before the district court, but it chose not to.  TecSec made a strategic decision in opposition to Adobe's motion for summary judgment to submit an expert declaration that only addressed the doctrine of equivalents on one point—the

"display header" limitation:

> Additionally, upon attempting to open an encrypted document, Adobe Acrobat prompts the user to enter the password. The user cannot proceed until the correct password is entered. Accordingly, Adobe Acrobat displays a display header and/or a header array display that is visually perceptible to the user. The displayed security setting properties are at least equivalent, in my opinion, to information contained within the encryption dictionary.

A3798 at ¶ 86. In addition, having declined the district court's offer of further briefing, TecSec itself created the absence of evidence on whether the "selecting a label" limitations are met under the doctrine of equivalents. *AquaTex Indus., Inc. v. Technique Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) (affirming district court's grant of summary judgment of non-infringement where non-moving plaintiff failed to provide sufficient evidence of equivalents). The grant of summary judgment on doctrine of equivalents was thus a result of TecSec's strategic decisions on how to prosecute the case, and should not be disturbed on appeal.

## IV. THE COURT SHOULD AFFIRM THE JUDGMENT OF NON-INFRINGEMENT ON ALTERNATIVE GROUNDS

### A. Acrobat Does Not Meet the "Object-Oriented Key Manager" and "Display Header" Limitations, as Correctly Construed by the District Court

The district court correctly construed both "object-oriented key manager," appearing in claim 1 of the '702 patent, claim 1 of the '755 patent, claim 1 of the '781 patent, and claim 1 of the '452 patent, and "display header," appearing in

claim 1 of the '755 patent.  Although the district court did not rely on these

limitations in finding no infringement, these limitations afford alternative bases for

affirming summary judgment of non-infringement.

### 1.    "Object-Oriented Key Manager"

An "object-oriented key manager" is a software management tool for

cryptographic keys, managing encryption on an object-by-object basis.  Each of the

four words of the term "object-oriented key manager" has meaning and must guide

the construction of the term.  The district court, relying on the specification,

correctly construed the term to mean "a software component that is capable of

performing the process of generating, distributing, changing, replacing, storing,

checking on, and destroying cryptographic keys."  A26.

TecSec advocates an incredibly broad construction of this term:  "software

that controls access to the algorithm used to encrypt and decrypt objects."  TecSec

Br. at 44.  This proposed construction completely eliminates both the words and

concepts of "key" and "manager" from the term, and broadens its meaning to

include anything that controls access to an algorithm, without requiring key

management at all.

To support its proposed construction, TecSec cites and quotes an amendment

to the specification common to the asserted patents.  It reads:

> Various methods have evolved to manage the distribution of keys.
> Such methods of distribution are collectively referred to as "key

management." *The function of key management is to perform the process of generating, distributing, changing, replacing, storing, checking on, and destroying cryptographic keys*.    Under normal circumstances, the key manager begins and ends a cryptographic session by controlling access to the algorithm used to encrypt and decrypt plain text objects.    Thus, a user who wants to encrypt an object or decrypt an object must first access the key manager so that an encryption algorithm may be chosen.

TecSec Br. at 45 (emphasis added); A156, 1:61–2:4; A172, 2:29–40; A189, 1:61–2:5; A3719–20; A3729.  The district court relied on this very text in adopting its construction, as the applicant acted as its own lexicographer for this term.  *Thorner v. Sony Computer Entm't*, 669 F.3d 1362, 1365, 1369 (Fed. Cir. 2012) ("To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning" by, for example, stating that a claim term "means" a specific definition.).  Where the specification "reveal[s] a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess, . . . the inventor's lexicography governs." *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1276 (Fed. Cir. 2011).

TecSec argues that because this paragraph uses two different terms—"key management" and "key manager"—the applicant not only intended to distinguish between the two, but intended a result where a key manager does not perform key management.  TecSec Br. at 45–47.  The quoted passage from the specification does not permit such an incoherent reading.

37

The record shows that Acrobat's security handler does not perform the "key management" required by the asserted claims. Key management requires the storage and distribution of keys. TecSec's expert did not opine that this limitation was met, instead he opined that "[the security handler] then stores and *effectively distributes* the key when the necessary components for the key are provided in the encryption dictionary with the PDF document." A3788 at ¶ 61 (emphasis added). But Acrobat does not *actually* store or distribute the key. *See also* A3883, 119:24–25 ("The key, then, itself is not retained, because it's up to the user to supply a password . . . ."); A3574, 120:5–10 ("The key is not saved. The key is re-derived from the password."); A3621 57:4–7 ("[T]he private keys are never exposed . . . . [W]e ask the operating system to use this certificate and decrypt using the private key. We don't know what the private key is."). TecSec cannot raise a triable issue of fact by providing expert testimony of infringement using a different claim construction than the one adopted by the court. *See GE Lighting Solutions*, 750 F.3d at 1314.

Thus, as there is no evidence that Acrobat stores, distributes, changes, replaces, or destroys keys, the district court's judgment of non-infringement may be affirmed on this ground. *Clock Spring, L.P. v. Applied Consultants, Inc.*, 560 F.3d 1317, 1324 (Fed. Cir. 2009) (The Court "may affirm a grant of summary judgment on a ground supported in the record but not adopted by the district court

if we conclude that 'there [wa]s no genuine issue as to any material fact and . . . the movant [wa]s entitled to a judgment as a matter of law.'")

## 2.    "Display Header"

The district court' correctly construed "display header" to mean "a header for making visually perceptible to a user." This construction reflects the plain and ordinary meaning of the term "display," which is "to put (something) where people can see it." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003); *see also* MACMILLAN ENGLISH DICTIONARY (2d ed. 2007) ("[A]n arrangement of things for people to look at."). For example, the Summary of the Invention in the specification of the '452 patent uses this ordinary meaning of "display": "The label *may appear* as a header *to authorized users*. . . . For example, the header may identify the object as a container object, and may further list the objects embedded in the container object, preferably in the form of an array, or tree structure." A174, 6:7–14 (emphasis added). The applicant chose to make this embodiment required by adding the term "display header" to the claims of the patent. The Summary further explains that "the header array will *show a user* all the objects to which he has access. Using this header, the user is allowed random access to any object embedded in the container object at any level, as long as that particular user is authorized at that location." *Id*. at 6:27–32 (emphasis added). As reflected in these excerpts from the specification, the applicant referred to the

"display header" as something that would "appear" to users as a header "showing" accessible "objects." The district court's construction properly reflects the applicant's understanding of the term in a manner that comports with the plain meaning of "display." *See Mangosoft*, 525 F.3d at 1329–31.

TecSec argues that the district court erred because it used the same ordinary meaning of the term "display" in construing both "displaying" (a verb) and "display header" (an adjective). According to TecSec, because "display" is an adjective describing the header, there is no requirement that the "display header" be shown to a user. Instead, TecSec believes Acrobat need only create a header not made visible to the user to meet the "display header" limitation.

This is nonsense. The district court's construction of "display header" does not require a *step* of displaying, as TecSec implies. It only requires that a display header exist, and that it be capable of being shown to the user. The term "display" modifies the term "header." Indeed, the district court explicitly noted that the two terms "cannot be given the exact same construction because the two terms are different parts of speech." A34.

Under the correct construction, Acrobat does not infringe because no "display header" is shown to the user. A2696; A3574, 120:18–23. Accordingly, the Court should affirm the judgment of non-infringement on the ground that this limitation is not met. *Clock Spring*, 560 F.3d at 1324 (affirming grant of summary

judgment on alternative ground).

**B.     Acrobat Does Not Contain Memory Hardware as Required by the Asserted System Claims**

The Court should affirm summary judgment of non-infringement with respect to all of the asserted system claims because it is undisputed that the accused products do not include the memory hardware required by those claims. Adobe argued before the district court that the asserted system claims require memory hardware.  A161–A162, '702 patent claims 8–9 ("a system memory means for storing data"); A210, '781 patent claims 14–15 ("a system memory for storing data").  Adobe does not provide memory or other data storage for Acrobat users.  A2641–A2642.

TecSec did not raise a dispute of fact on this point.  *See* A3453–A3489. Accordingly, the Court may properly affirm the judgment of the district court on this alternative ground as to the asserted system claims.  *See Pandrol USA, LP v. Airboss Ry. Prods., Inc*., 320 F.3d 1354, 1366–67 (Fed. Cir. 2003) (nonmoving parties waive grounds not raised in opposition to motion for summary judgment).

**C.     Acrobat Does Not Meet the "Label" or "Labelling" Limitations of the Asserted Claims**

**1.     "Label"**

The judgment below can also be sustained without ruling on construction of "label" because the record evidence does not show infringement under either party's construction.  The asserted claims require an "object" to be encrypted, and

further require that the same object be labelled.  *See, e.g.,* A178, 14:45–49 (reciting "a first object to encrypt" and then reciting "selecting a first label *for the first object*") (emphasis added).  That is, the same object is both encrypted and labelled.  *E.g., NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005) (construing claim term employing definite article "the" as requiring an antecedent basis and therefore referring to the same claim element).  TecSec identified one instrumentality as the encrypted "object"—the strings and streams in the body of a PDF file that collectively are encrypted—and a completely different "object" as the instrumentality that is labeled—the entire PDF file, which also contains the header and trailer.  A4081–A4082, A4089–A4091, A4094, A4097; A3466.  There is a mismatch between the purported object encrypted (a combination of strings or streams), and the purported label (an entire PDF document).  This disconnect defeats TecSec's claim of infringement.  *See JVC Kenwood Corp. v. Nero, Inc.*, No. 2014-1011, 2015 WL 4892413, *7 (Fed. Cir. Aug. 17, 2015) (affirming district court's grant of summary judgment where patentee offered inconsistent infringement arguments, noting that the patentee cannot "have it both ways").

In the alternative, Adobe urges affirmance of the district court's construction of "label" and a finding that the encryption dictionary, whether used with passwords or with certificate security, is not a label.

The district court correctly construed the term "label" to mean "a series of

letters or numbers, separate from but associated with the sending of an object, which identifies the person, location, equipment, and/or organization which is permitted to receive the associated object." A26–A32. The '702 patent provides an express definition of "label": "A file 'label' *for purposes of this invention* means a series of letters or numbers, which may or may not be encrypted, separate from but associated with the sending of a message, which identifies the person, location, equipment, and/or organization which is permitted to receive the associated message." A156, 2:34–40 (emphasis added). TecSec cannot now disavow this express definition. *Thorner*, 669 F.3d at 1365, 1369 (adopting express definition).

The '702, '755, and '781 patents also explicitly incorporate by reference another patent application—U.S. Pat. App. No. 08/009,741—containing essentially the same definition. A156, 2:58–61; A189, 2:55–58; A205, 2:44–46; *see Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006) ("Incorporation by reference provides a method for integrating material . . . into a host document . . . . [It] is effectively . . . as if it were explicitly contained therein.") (citations omitted). While the '741 application described labelling "messages," and the asserted patents are directed to labelling "objects," this difference does not support TecSec's contention that the express definition only applies to the prior art.

The district court correctly held that Acrobat's password security did not meet the "label" limitations. A37–A40. The encryption dictionary does not store a

password.  A39 (citing A3587, 17:9–22).  Instead, the encryption dictionary

contains password keys to test whether the password entered by a user is correct.

*Id*.  Moreover, the user and owner passwords do not identify a user or location;

mere possession of the password affords access.  A39.  Therefore, the encryption

dictionary does not identify a person, location, equipment, or organization as

required by a "label" of the asserted claims.  *Id*.

### 2.    "Labelling"

The judgment below can also be affirmed on the alternative ground

expressed by the district court in footnote 23 of its order, that TecSec cannot prove

infringement even under its own construction of "labelling."  A40, n. 23.  In fact,

the Court can affirm on this basis without settling claim construction, as under

either party's construction the accused products do not infringe.

Each asserted claim requires a form of "labelling."  *Id*.  The district court

adopted TecSec's proposed construction that this term be construed to mean

"attaching a label."  *Id*.  However, as the district court concluded, "what TecSec

alleges is a label is not 'attached to' the object, it is part of the object."  *Id*.  The

record evidence shows that Acrobat does not attach an encryption dictionary to an

encrypted PDF document; instead, it inserts the data for the encryption dictionary

into the pre-existing trailer for that file.  A2491–A2492 at ¶ 22; A2948

("Encryption-related information shall be stored in a document's encryption

dictionary, which shall be the value of the Encrypt entry in the document's trailer dictionary."). TecSec's expert admitted that the encryption dictionary is part of the trailer portion of a PDF document and contains the information needed to access the document. A3790–A3791 at ¶ 68; A3772 at ¶ 40. The district court correctly concluded that the encryption dictionary, TecSec's accused "label," is therefore part of the PDF document, and not a label that is attached to it during the labelling step.

In the alternative, the record also shows that under Adobe's proposed construction of the term "labelling," there is no infringement. Adobe argued that "labelling" means "attachment of a label to an object by software after encryption of that object." *See* A2468. The DCOM patents describe a system in which labels are attached to each object (*i.e.*, "compartment[ing] every object by label attributes") and used to provide a level of protection in addition to encrypting the object (*i.e.*, "provid[ing] a level of protection in addition to cryptographic protection"). A157, 4:22–25, A156, 2:31–34. This "compartmentalization" is essential to achieving the multi-level security claimed by the DCOM patents because it separates each labelled object for clear data separation. *Id*.; *see also* A161, 11:49–54. Accordingly, the DCOM patents require multiple levels of labels corresponding to each encrypted object. For that reason, Adobe's proposed construction of "labelling" is supported by the specification of the DCOM patents.

Acrobat does not meet the "labelling" limitation under this construction. When a user selects an entire Acrobat document to be encrypted, certain portions of, or objects within, the document are not encrypted. *See* A2614–A2615 ("Encryption is not applied to other object types such as integers and boolean values."); *see also* A2490 at ¶ 18. Thus, the "object" selected for encryption ends up as a mix of encrypted and non-encrypted data, and no label is attached to a single encrypted object. Acrobat does not meet the "labelling" limitations when properly construed. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1350 (Fed. Cir. 1998) (affirming summary judgment of non-infringement on an alternative ground raised on appeal).

### D. Acrobat Does Not Meet the "Multi-Level . . . Security" Limitation of the Asserted Claims

The judgment below can also be affirmed on the ground that Acrobat does not meet the "multi-level . . . security" limitation because Acrobat does not provide multiple layers of encryption. Each asserted claim requires at least two layers of encryption, *i.e.*, that the system or method nests one encrypted object within another object, which is also encrypted. TecSec cannot map the patents' complex, multi-level technique for restricting access to nested objects to Acrobat's single level of encryption.

The Court previously held that the term "multi-level . . . security," as used in these asserted patents, required multiple layers of encryption. *TecSec IV*, 731 F.3d

1345–46.  The Court based its decision on the prosecution history of the patents.

In response to the examiner's rejection, the applicant amended the specification to

explain that "multi-level . . . security" was achieved when "encrypted objects [are]

nested within other objects which are also encrypted."  *Id.* at 1345 (quoting A157,

4:25–34).

At the district court, TecSec contended that Acrobat meets the "multi-level

. . . security" limitation using PDF envelopes and the PDF portfolio functionality.

The record shows that these aspects of the accused products provide a single level

of encryption.  The accused products can encrypt only one level of information,

either a PDF document itself or the attachments to the PDF document, but not each

in turn.  A2596.  The envelope feature does not change this scheme.  Rather, the

envelope is only an alternative representation on the user's screen of a PDF format

document.  A2489–A2490 at ¶ 17.

The accused Acrobat encryption functionality provides a single layer of

encryption.  The contents of PDF documents are represented according to the PDF

standard as objects, such as string objects or stream objects.  A2482–A2484 at

¶¶ 6–7.  When a file of any kind is attached to any PDF document, including a PDF

envelope or portfolio, the file data is stored as a stream object.  A2486 at ¶¶ 11–12.

In a PDF document, the contents of an attached file are stored *in-line* with other

content as a stream object *at the same level* as other objects that comprise the PDF

document. *Id.* at ¶¶ 12–13. They are processed in a "blind" fashion – the accused products are not content aware of whether previously encrypted text is present. A2490–A2491 at ¶ 20.

In addition, TecSec's infringement theory depends on the assumption that a user may place an object he or she previously encrypted using either Adobe or third party products within a PDF for nested encryption. However, that would not demonstrate that the accused products provide "multi-level . . . security" as required by all the asserted claims. TecSec dismissed any claims of indirect infringement by Adobe. A3818–A3819, 3:24–4:8. The district court erred in concluding that this was a proper theory of direct infringement. A36–37. TecSec presented no evidence that the acts of such a hypothetical user "are attributable to" Adobe such that Adobe "is responsible for the infringement." *Akamai Techs., Inc. v. Limelight Networks, Inc.,* No. 2009-1372, 2015 WL 4760450, at *1 (Fed. Cir. Aug. 13, 2015). Adobe neither directs nor controls how users operate multiple sessions of Acrobat, nor has Adobe and its customers formed a joint enterprise. *See* A2593 (TecSec contends that a user, not Acrobat, performs steps of the method claim).

In addition, TecSec's infringement theory fails because the claims require multi-level security that encrypts an object, labels it, nests the object in another object, encrypts that and labels it. Each of the asserted independent claims requires

"multi-level security."  A161, 12:2–3, 12:45–46; A178, 14:42–43, A179, 15:50–

51; A194, 11:52–53; A210, 11:16–17.  The DCOM patents explain that "multi-

level security" is achieved by "being able to compartment every object *by label*

*attributes and algorithm attributes*."  A157, '702 patent at 4:22–25 (emphasis

added); *see also* A2938, '702 Patent File History, May 3, 1994 Response to Office

Action (". . . Applicant's claimed method of 'multi-level multimedia security'

using labelled encrypted objects . . .").  Additionally, the DCOM patents explain

that "labelling" provides "a level of protection in addition to cryptographic

protection."  A156, 2:31–34.  Each nested, encrypted object must have its own

label.  A157, 4:22–25.

Acrobat does not ". . . provide[] a level of protection in addition to

cryptographic protection" or attach a label to an object by software after encryption

of that object.  First, Acrobat's encryption process relies on the password or

certificate to create the items in the encryption dictionary that will, on decryption,

be used to test the encryption key.  The encryption dictionary provides no

additional level of protection over encryption itself.  A2493–A2494 at ¶ 27;

A3575, 121:16–20 ("You need to have the password in order for the security

handler or the password security handler to generate the key for the decryption,

correct?  A. Right."); A3536, 61:20–22 ("Q. So if I have a certificate with an

appropriate key that can decrypt it, it will just decrypt it? A Yes.").  Second,

pasting together what happens in two separate sessions of Acrobat does not

compartment objects by label attributes. Each "object" at each level does not have

its own "label."

The record demonstrates that multiple grounds, including non-infringement

of the terms "label," "labelling," and "multi-level . . . security," exist to affirm the

decision of the district court. *Digital Biometrics*, 149 F.3d at 1350 (affirming

summary judgment of non-infringement on an alternative ground raised on appeal).

## V.    TECSEC'S REQUEST FOR REASSIGNMENT FOLLOWING REMAND SHOULD BE DENIED

Reassignment on remand to a different district judge is "exceedingly rare."

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 424 F.3d 1235, 1244 (Fed. Cir. 2005).

The parties agree that the Court, in deciding a request for reassignment, applies the

law of the regional circuit in which the district court sits. TecSec Br. at 51; *Juicy*

*Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1370 (Fed. Cir. 2004).

Accordingly, on this reassignment request by TecSec, the Court should look to the

law of the Fourth Circuit.

Absent a claim of bias—which TecSec does not raise here—reassignment in

the Fourth Circuit is appropriate only in "unusual circumstances." *U.S. v. N.*

*Carolina*, 180 F.3d 574, 582–83 (4th Cir. 1999) (quoting *U.S. v. Guglielmi,* 929

F.2d 1001, 1007 (4th Cir. 1991)). Such circumstances are determined by

evaluating the three-factor test recited by TecSec in its briefing:

1)      whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected,

2)      whether reassignment is advisable to preserve the appearance of justice, and

3)      whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

TecSec Br. at 51; *Bocek v. JGA Assocs., LLC*, No. 14-1208, 2015 WL 3775644, at

*10 n. 7 (4th Cir. June 18, 2015); *N. Carolina*, 180 F.3d at 582–83; *Guglielmi,* 929

F.2d at 1007.

The Court has noted that "such unusual circumstances" warranting reassignment "rarely exist." *Juicy Whip*, 382 F.3d at 1374 (internal quotation omitted) (applying Ninth Circuit law, which applies the same three-factor test as the Fourth Circuit); *see Int'l Rectifier*, 424 F.3d at 1244 (in applying Ninth Circuit law, which applies the same three-factor test as the Fourth Circuit, the Court explained that "[t]he cases in which such relief has been granted reflect rare and compelling circumstances.").

Reassignment on remand is not proper here because TecSec has not met its burden of showing that unusual or compelling circumstances exist.  TecSec cites three events in support of its request for reassignment: 1) the Court's reversal in the second *TecSec* appeal of the district court's prior indefiniteness finding, 2) the district court's present grant of summary judgment to Adobe based on the

"selecting a label" limitation, and 3) the district court *sua sponte* raising—but not addressing—a question concerning invalidity.  TecSec Br. at 50–54.

However, review of the entire record shows that the cited opinions of the district court are carefully reasoned and reflect impartial consideration of both the law and facts.  Nor has the district court actually ruled on validity in the Adobe proceedings.

First, in the IBM proceedings, the district judge decided issues in favor of both IBM and TecSec.  For example, the district judge denied IBM's summary judgment motion on inequitable conduct and invalidity.  *TecSec I*, 763 F. Supp. 2d at 819.  Subsequently, the district court granted IBM's motion for summary judgment of non-infringement.  *TecSec II*, 769 F. Supp. 2d 997.  On appeal, the Court summarily affirmed the district court's non-infringement ruling.  *TecSec III*, 466 F. App'x. 882.  Entering an order summarily affirmed by the Court is hardly indicative of bias against TecSec.

Second, in the October 2, 2013 appeal, the Court affirmed in part, and reversed in part.  *TecSec IV*, 731 F.3d at 1344–46.  Its opinion makes no suggestion that the rulings of the district court were in any fashion outlandish.  *Id.* Specifically, the Court affirmed the district court's construction of the "multi-level . . . security" limitation and reversed the district court's constructions with respect to the "multimedia" limitation and certain means-plus-function limitations.  *Id.*

While TecSec tries to portray the portions of this ruling on the means-plus-function limitations as indicative of the district judge's lack of impartiality, that position does not withstand scrutiny. First, TecSec inaccurately alleges that "the district court judge found, *sua sponte*, that 16 claim terms were in means-plus function format." TecSec Br. at 51. In fact, the means-plus function arguments were raised in the moving party's opening brief. A4475–A4477. Moreover, the Court affirmed the district court's claim construction rulings in part. In the objected to ruling on the means-plus-function claim terms, the Court affirmed the district judge's ruling that 14 of the 16 terms at issue were in means-plus-function format. *TecSec IV*, 731 F.3d at 1346–49. While it reversed the district court's conclusion that these means-plus-function claim terms lacked sufficient corresponding structure, that conclusion does not indicate that the district court decision was the result of bias. Rather, the district court was addressing an area of law on which district courts have been both affirmed and reversed for reaching similar conclusions. For example, in an arguably similar case the Court affirmed the grant of summary judgment. *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1318–19 (Fed. Cir. 2013) (affirming a summary judgment rendered as part of the claim construction order that a claim was invalid for being indefinite for not disclosing the structure that performed a "transmitting" function of a means-plus-function limitation where the specification showed that a "black box" that

performed the function was a computer programmed to do the transmitting function but the specification gave no details as to *how* the computer did the function; the Court rejected the argument that one of ordinary skill in the art would be able to provide the necessary programming for the transmitting function). However, in another arguably similar case, the Court has reversed. *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1383–86 (Fed. Cir. 2011) (reversing summary judgment that means-plus-function limitation reciting a "means for cross-referencing" was invalid for failing to disclose corresponding structure of the algorithm the computer ran to perform the function, the Federal Circuit ruling that the textual description of the steps the computer had to perform given in the specification sufficiently disclosed the "algorithm" as there was no evidence that a programmer of ordinary skill would not be able to program the "algorithm" based on the textual description).  The Court has since issued its decision in *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352, 1354 (Fed. Cir. 2015) (*en banc*) (the Court explaining that "[w]e require that the specification disclose an algorithm for performing the claimed function," and concluding that because patentee had failed to show the required algorithm, it had "failed to point to an adequate disclosure of corresponding structure in the specification").

Second, as discussed in section I above, the district court gave TecSec proper notice and an opportunity to be heard on the "selecting a label" limitation

prior to granting summary judgment of non-infringement. Moreover, the district judge displayed her impartiality throughout the summary judgment proceedings. Over Adobe's opposition, the district court granted TecSec's motion to strike Adobe's arguments regarding divided infringement and indirect infringement from its motion for summary judgment. A64. The district court also permitted some, but not all, of the discovery requested in TecSec motion to compel, even though those requests were not timely served. A61–A62. The district court later denied Adobe's motion to strike certain paragraphs from the declaration of TecSec's expert. A66. Even in its summary judgment opinion, the district court issued a mixed ruling, adopting some of TecSec's claim constructions and some of Adobe's constructions. A16–A35. Similarly, the district court ruled in favor of TecSec on certain non-infringement arguments and for Adobe on others. A35–A41. The district court, additionally, denied Adobe's motion for attorney fees after ruling on non-infringement. A45. Put simply, the district judge decided issues in favor of both parties, and her summary judgment opinion does not indicate compelling circumstances requiring reassignment on remand.

Third, the district court's indication in a footnote in its summary judgment opinion, and in a subsequent hearing, that TecSec's asserted patents might be vulnerable to challenge on invalidity grounds likewise does not warrant reassignment. The district court cannot be faulted for alerting the parties to the

prospect that TecSec's asserted claims might be vulnerable to challenge as claiming patent-ineligible subject matter under 35 U.S.C. § 101, given the Supreme Court's recent *Alice* decision. The developing case law in this area is of keen interest to both litigants and the bench alike. The Court issued its *Ultramercial* decision on November 14, 2014, not long before the district judge's remarks. Given the district court's interest in managing this litigation, the court quite understandably flagged this issue for the parties' consideration. The district court was clear, however, that it had no intention of deciding the question of patent-ineligible subject matter now, and declined to take up further briefing on invalidity prior to entering judgment in Adobe's favor. A45; A4363, 3:9–15 (the district judge explaining her reasoning for denying Adobe's motion, "I think the case is properly ripe for the Federal Circuit to take a look. . . . If we're reversed, then it comes back, and if then the invalidity issue wants to be addressed by Adobe, it can be.").

The district court has not pre-judged the question of subject matter eligibility, nor otherwise indicated that it would not decide that issue impartiality on the merits following remand; the district court merely noted a significant question bearing on the validity of the asserted patents that should be addressed, if appropriate, on remand following this appeal. *See Juicy Whip,* , 382 F.3d at 1374 ("We cannot say, based on the few excerpts cited by Juicy Whip in view of the

entire lifetime of this litigation spanning nearly seven years, that the district court judge has demonstrated such irreversibly firm views that the case requires reassignment or that such action is necessary to preserve the appearance of justice."). Furthermore, the district judge's prior denial of IBM's motion for summary judgment of invalidity and inequitable conduct belies TecSec's suggestion that the district court is determined to rule against TecSec on invalidity.

As explained above, TecSec cannot show that reassignment is advisable because the district judge will lack impartiality, or to preserve the appearance of justice—the first two factors of the Fourth Circuit's three-factor test. Additionally, the third factor is not met because reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. TecSec brought this suit against Adobe and eleven other unrelated defendants over five years ago—on February 5, 2010. A4368–A4450. During those years, the district judge has gained great familiarity with the complex patents and facts of this case. The district judge has undertaken multiple claim constructions, and analyzed and opined on various invalidity and infringement arguments, while maintaining impartiality throughout. Thus, reassignment would only result in a waste of judicial resources. *Juicy Whip*, 382 F.3d at 1374 (denying reassignment because the "district court judge is quite familiar with the parties and the issues, and reassignment would only result in a waste of judicial resources"); *Int'l Rectifier*,

57

424 F.3d at 1244 ("Given the extremely high threshold, we do not think reassignment is appropriate in this case."); *N. Carolina*, 180 F.3d at 582–83 ("And, in light of the lengthy history of this case, reassignment would entail a waste of judicial resources that is disproportionate to any increased appearance of fairness. Accordingly, we reject the request for reassignment.").

## CONCLUSION

For the reasons set forth above, the district court's order granting summary judgment of no infringement should be affirmed.

Dated:  September 30, 2015          Respectfully submitted,

FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  (650) 988-8500
Facsimile:  (650) 938-5200


By: */s/Charlene M. Morrow*
        Charlene M. Morrow

*Attorneys for*
*Defendant-Appellee*
*ADOBE SYSTEMS INCORPORATED*

# CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2015, the foregoing CORRECTED

RESPONSE BRIEF OF APPELLEE ADOBE SYSTEMS INCORPORATED to be

electronically filed with the Clerk of the Court using CM/ECF, which will

automatically send notification of such filing to counsel of record.


*/s/Charlene M. Morrow*
        Charlene M. Morrow
*Attorneys for*
*Defendant-Appellee*
*ADOBE SYSTEMS INCORPORATED*

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND
TYPE STYLE REQUIREMENTS**

1.      This brief of Appellee complies with the type-volume limitation of

Fed. R. App. P. 32(a)(7)(B).  The brief contains 12,981 words, excluding the parts

of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b).

2.      The brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Fed. R. Civ. P.

32(a)(6).  The brief has been prepared in a proportionally spaced typeface using

Microsoft Office Word Version 2010 in 14-point Times New Roman.

Dated:  September 30, 2015          FENWICK & WEST LLP
                                   801 California Street
                                   Mountain View, CA  94041
                                   cmorrow@fenwick.com
                                   Telephone:  650-988-8500
                                   Facsimile:   650-938-5200


                                   By:*/s/Charlene M. Morrow*
                                       Charlene M. Morrow
                                       *Attorneys for*
                                       *Defendant-Appellee*
                                       *ADOBE SYSTEMS INCORPORATED*